# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| NOVELLA MCKEEVER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> **Commissioner of Social Security,** ) <br> ) <br> Defendant. ) <br> ) | CIVIL NO. 3:09CV339 |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Novella McKeever, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner granting her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI") based upon a later onset date of November 16, 2007 than she had alleged. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations prior to November 16, 2007.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 8) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on January 5, 2007, claiming disability due to drug addiction, severe depression, arthritis, and "stressed issues", with an alleged onset date of December 11, 2006 (R. at 116-127, 141.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 65-70; 75-84.) On October 15, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 27-50.) On November 20, 2008, the ALJ granted in part and denied in part Plaintiff's application, finding that she was not disabled under the Act prior to November 16, 2007, where Plaintiff retained the residual functional capacity to perform her past relevant work, either as actually performed or as generally performed in the national economy; but that she became disabled as of November 16, 2007. (R. at 14-19.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits prior to November 16, 2007, supported by substantial evidence on the record and the application of the correct legal

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

2

standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 12.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of residuals of osteoarthritis and depression, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-14.) The ALJ next determined that prior to November 16, 2007, Plaintiff had the RFC to perform light work, except that due to her pain and psychologically based symptoms, she was able to understand, remember, and carry out only short, simple instructions and perform routine tasks, and she was limited in her ability to interact with the public, supervisors, and co-workers. (R. at 14-16.) However, beginning on November 16, 2007, Plaintiff had the RFC to perform only sedentary work, except that she retained the ability to understand, remember, and carry out short, simple instructions and perform routine tasks, but was still limited in her ability to interact with the public, supervisors, and co-workers. (R. at 16-17.)

The ALJ then determined at step four of the analysis that prior to November 16, 2007, Plaintiff could perform her past relevant work as a janitor at American Tobacco as it was

6

actually performed. (R. at 17-18.) Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the ALJ concluded that Plaintiff was not disabled prior to November 16, 2007, and was employable such that she was not entitled to benefits, while she was entitled to benefits thereafter where her RFC prevented her from being able to perform her past relevant work. (R. at 17-18.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were not a significant number of jobs in the national economy that Plaintiff could perform as of November 16, 2007. (R. at 18-19.) Accordingly, the ALJ concluded that Plaintiff became disabled on that date. (R. at 19.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ improperly discounted Plaintiff's credibility; (2) the ALJ improperly found that Plaintiff had the RFC to perform her past relevant work; and (3) the ALJ failed to utilize a Medical Expert ("ME") to determine Plaintiff's onset of disability date. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-7.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standards such that it should be

affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-16.)

### A. The ALJ properly assessed Plaintiff's credibility.

Plaintiff contends that the ALJ's credibility analysis is entitled to no weight. (Pl.'s Mem. at 3.) Plaintiff cites the unpublished case of Broyles v. Barnhart, which states that the adjudicator must consider a variety of factors in addition to the objective medical evidence. 2005 WL 1048732, *11-12 (E.D. Va. 2005). (Pl.'s Mem. at 3-4.) Plaintiff also contends that there is no causal link between the ALJ's description of the medical evidence and his credibility determination. (Pl.'s Rebuttal Brief in Supp. of Mot. for Summ. J. ("Pl.'s Rebuttal") at 1-2.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and

8

persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Here, the ALJ found that Plaintiff's medically determinable impairments of osteoarthritis and depression could reasonably be expected to produce her alleged symptoms; however,

9

Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible concerning her condition prior to November 16, 2007, "to the extent they are inconsistent with the [RFC] assessment <u>for the reasons explained below</u>."[6] (R. at 15, emphasis added.) Then, contrary to Plaintiff's assertion that this statement was the extent of the ALJ's analysis of her credibility, the ALJ went on to discuss the reasons why Plaintiff's statements were inconsistent with the RFC assessment. (Pl.'s Mem. at 3, R. at 15.) Specifically, the ALJ discussed Plaintiff's medical records, opinion evidence, and Plaintiff's own statements. (R. at 15-16.) Furthermore, though Plaintiff cites the <u>Broyles</u> case in her brief, she does not address how the case supports her contention, and disregards the ALJ's analysis entirely. 2005 WL 1048732 at *11-12.[7]

The ALJ discussed Plaintiff's treatment records, opinion evidence, and Plaintiff's own statements in his analysis. The ALJ noted that during the relevant time period,[8] records reflected Plaintiff's subjective complaints of pain in her knees and hips, but diagnostic testing and medical records revealed no significant abnormalities. (R. at 15.) For example, an August 7, 2007 x-ray of Plaintiff's left knee revealed normal bony mineralization, some calcification occurring within the lateral meniscus, and otherwise normal articular surface. (R. at 259.) Dr. Bolling J. Feild examined Plaintiff on August 8, 2007, and noted that she had no edema of the legs; her ankles,

---

[6] Though Plaintiff cites this exact statement twice, on both occasions she apparently disregards the language "for the reasons explained below." (Pl.'s Mem. at 3, Pl.'s Rebuttal at 2.)

[7] The language Plaintiff quotes in her brief from the <u>Broyles</u> case is actually language in SSR 96-7p. 2005 WL 1048732 at *11-12. (Pl.'s Mem. at 3-4.) The Court will not, therefore, address the case, as it is simply noted that SSR 96-7p is a regulation the ALJ must act in accordance with in determining Plaintiff's RFC and assessing her credibility.

[8] The relevant time period is from December 11, 2006 (Plaintiff's alleged onset of disability date) and November 16, 2007 (the onset of disability date determined by the ALJ.)

knees, hips, fingers, wrists, elbows, and shoulders appeared normal; her lower back was not tender; she had no decreased range of motion; she was able to get up and walk without difficulty; she did not appear to need a cane; and she did not appear to have significant pain, nor any objective evidence of any cause for pain. (R. at 261-64.) The ALJ also noted that Plaintiff had not undergone any surgery or physical therapy, but took non-prescription medication (Aleve) for arthritis pain. (R. at 15.) Also, despite Plaintiff's allegations, Plaintiff stated that she took care of her own personal needs, cooked, swept floors, washed dishes in the dishwasher, did some laundry, and sometimes walked to the store. (R. at 48, 159, 227.)

However, thereafter, x-rays on November 16, 2007 of Plaintiff's hips and knees revealed moderate degenerative changes bilaterally in Plaintiff's hips with osteophyte formation, subchondral sclerosis,[9] and cyst formation; mild degenerative changes in the lateral and patellofemoral compartments of her right knee; mild degenerative changes in all three compartments of her left knee; and chondrocalcinosis[10] in both knees. (R. at 282-84.) Accordingly, the ALJ generally credited Plaintiff's allegations of symptoms and limitations as of November 16, 2007, as he found them to be consistent with the medical evidence of record. (R. at 16-17.)

With regard to Plaintiff's depression, records indicate that she was hospitalized at Southside Regional Medical Center from December 13, 2006 to December 20, when she was

---

[9] Sclerosis is "an induration or hardening, such as hardening of a part from inflammation, increased formation of connective tissue, or disease of the interstitial substance." Dorland's Illustrated Medical Dictionary 1705 (31st ed. 2007). "Subchondral" means beneath the cartilage. Id. at 1815.

[10] Condrocalcinosis is the presence of calcium salts in the cartilaginous structures of one or more joints. Dorland's Illustrated Medical Dictionary at 358.

11

diagnosed with depression with suicidal thoughts, and upon discharge was prescribed Depakote and Zoloft, as well as scheduled for a therapy appointment. (R. at 194-211.) On March 8, 2007, Plaintiff was examined by psychologist Dr. Linda E. Scott, who opined that Plaintiff had depressive disorder, but that she was able to remember and concentrate fairly well and was capable of completing simple and repetitive tasks for two hours at an acceptable pace without a break. (R. at 224-29.) Plaintiff also received therapy at a mental health facility (District 19) from September 2007 to August 2008, during which time it was noted that she exhibited continued progress and treatment for depression. (R. at 285-308.) In November 2007, treatment records at District 19 reflect that Plaintiff's depression was lessening, and that she was dealing with her environment and unstable living situation to the best of her abilities. (R. at 296.)

The ALJ noted that he gave the opinions of state agency medical and psychological consultants significant, but not controlling weight, regarding Plaintiff's condition prior to November 16, 2007. (R. at 16.) The ALJ also noted that their conclusions were consistent with the medical record. (R. at 16.) The ALJ concluded that the actual objective findings of examining sources did not reflect signs or symptoms that would preclude Plaintiff from performing light tasks, except that she was limited to remembering and carrying out only short, simple instructions and performing routine tasks; and Plaintiff's ability to interact with the public, supervisors, and co-workers was limited. (R. at 16.)

The ALJ's conclusion that Plaintiff's credibility as to her condition was questionable prior to November 16, 2007 was reasonable, based on other findings of fact, and supported by the above evidence. The ALJ properly considered all the medical and relevant evidence in the record, in accordance with case law and Social Security Regulations. As such, the ALJ properly

12

evaluated Plaintiff's complaints of pain and limitations, and his finding that Plaintiff was not credible prior to November 16, 2007 is supported by substantial evidence and application of the correct legal standards.

> B. **The ALJ properly found that prior to November 16, 2007, Plaintiff had the RFC to perform her past relevant work as it was actually performed.**

Plaintiff contends that she has an "obviously chronic condition" which has been present since her alleged onset date of December 11, 2006. (Pl.'s Mem. at 6.) Plaintiff argues that the ALJ's finding of Plaintiff's onset of disability date as November 16, 2007, is neither logical nor permissible, and that he used a "bogus" credibility finding and x-rays taken on November 16, 2007, to choose the onset date. (Pl.'s Mem. at 6.)

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The burden remains on Plaintiff at step four to prove that she is unable to perform her past relevant work. Plaintiff must "show an inability to return to her previous work (*i.e.,* occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).). Further, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles (DOT) as presumptively descriptive of a claimant's prior work. Id.

Plaintiff offers no actual argument as to why she could not perform her past relevant work; Plaintiff, in essence, simply repeats her contention that the ALJ's determination of her onset of disability date was improper. (Pl.'s Mem. at 4-6.) As noted earlier, the ALJ's finding as to Plaintiff's credibility during the relevant period was substantiated by medical and relevant

13

evidence of record. Also, as noted previously, the medical evidence supported an onset of date of November 16, 2007, not December 11, 2006. Plaintiff notes, as support for the earlier onset date, that on March 1, 2007, a physician noted that Plaintiff complained of swollen knees and lower back pain intermittently for five months. (R. at 309, Pl.'s Mem. at 4.) Plaintiff also states that on March 23, 2007, an examiner noted that walking was difficult for her. (R. at 227, Pl.'s Mem. at 4.) On June 1, 2007, it was noted that Plaintiff walked with the assistance of a cane,[11] and walking, sitting, and standing seemed to cause pain; however, it is also noted that the observation is that of an employee in the agency's field office, not an examining physician. (R. at 168, Pl.'s Mem. at 4.)

It is significant that the ALJ did not entirely discredit Plaintiff's allegations. Instead, the ALJ concluded that Plaintiff's severe impairments of osteoarthritis and depression could reasonably be expected to produce her symptoms. (R. at 15.) However, what the ALJ disputed was Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms. (R. at 15.) Plaintiff failed to offer sufficient evidence to justify her allegations that her impairments were disabling, or that she could not perform the requirements of light work. Because Plaintiff has failed to offer evidence proving she was unable to perform the requirements of light work prior to November 16, 2007, and some of her past relevant work was categorized as light in exertion by the VE,[12] the ALJ's conclusion that Plaintiff was capable of performing her past relevant work prior to November 16, 2007 is supported by substantial

---

[11] Plaintiff admitted that her cane was not prescribed for her. (R. at 49.)

[12] The VE stated that work as a janitor entailed light to medium exertion. However, Plaintiff's own description of her work as a janitor with American Tobacco as she performed it was consistent with a finding of light, unskilled work. (R. at 54.)

evidence and application of the correct legal standards. (R. at 17-18.)

>    C.    The ALJ's determination of Plaintiff's onset of disability date was proper, and determination of such date did not require the assistance of a ME.

Plaintiff cites SSR 83-20 and Bailey v. Chater as support for her contention that the ALJ wrongfully failed to utilize a ME before rejecting Plaintiff's alleged onset of disability date. 68 F.3d 75, 79-80 (4th Cir. 1995). (Pl.'s Mem. at 6-7.) However, Plaintiff offers no evidence as to why the ALJ's failure was incorrect. Plaintiff only argues that one cannot conclusively say that Plaintiff was disabled on November 16, 2007, but not one day beforehand, and that such a situation is one in which the aid of a medical advisor is required. (Pl.'s Rebuttal at 2-3.)

SSR 83-20 provides that the onset date must have a legitimate medical basis. If the onset date must be inferred, SSR 83-20 states that the ALJ should enlist the services and opinion of a medical advisor. The Fourth Circuit has affirmed the principle in Bailey v. Chater, in which it held that the use of a medical advisor is necessary where the onset date is ambiguous. 68 F.3d at 79. However, the Court also noted that SSR 83-20 does not expressly mandate that an ALJ must consult a medical advisor in every case where the onset of disability is only inferred. Id. at 79. In Bailey, the Fourth Circuit determined on appeal that the ALJ's decision to award benefits as of six months prior to the consultative examinations was, in essence, "wholly arbitary" where it was not supported by substantial evidence. Bailey, 68 F.3d at 80. The appellate court found an "absence of clear evidence documenting the progression of Bailey's condition," ruling that the ALJ did not have the discretion to proceed without a medical advisor. Id. at 79.

Here, as noted earlier, the record provides clear evidence documenting the progression of Plaintiff's condition. Further, Plaintiff has not offered any substantial evidence that her disabling conditions were present before November 16, 2007. A medical advisor is only

15

necessary where the onset of disability date must be inferred, which is not the case here. Because there was clear evidence documenting Plaintiff's condition, all of which was considered by the ALJ before reaching his decision, there was no need to seek the assistance of a medical advisor to determine the onset of Plaintiff's disability date.

It is clear from the ALJ's opinion that the entire record, including all medical evidence, was considered before he reached his determination of Plaintiff's onset disability date; therefore, in accordance with SSR 83-20, the onset date has a legitimate medical basis. While it is correct that when the onset date is ambiguous the agency must consult a medical advisor (Pl.'s Mem. at 6-7, Pl.'s Rebuttal at 2-3), the determination of the onset date in this case was not ambiguous, and is supported by the record. The Court therefore recommends a finding that the ALJ's conclusions regarding the onset date of disability are based on substantial evidence in the record and application of the correct legal standard, and should not, therefore, be overturned.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 8) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                         /s/
                                    DENNIS W. DOHNAL
                                    UNITED STATES MAGISTRATE JUDGE

Date: February 24, 2010
Richmond, Virginia